UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Samuel Hynes and Lisa Hynes

    v.                                 Civil No. 18-cv-528-LM
                                        Opinion No. 2019 DNH 187

Bank of New York Mellon et al.


**O R D E R**

In a case that was removed from the New Hampshire Superior Court, Rockingham County, Samuel and Lisa Hynes bring suit against New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and the Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificate Holders of CWABS, Inc. Asset Backed Certificate Series 2007-13 ("Bank of New York"), alleging claims arising out of defendants' alleged misrepresentations in connection with their mortgage agreement and a loan modification agreement. Plaintiffs also allege that defendants acted in bad faith and without due diligence in connection with the foreclosure sale of plaintiffs' home, which resulted in the home being sold at below fair market value. Defendants move for summary judgment on all of plaintiffs' claims. Plaintiffs object in part.

**STANDARD OF REVIEW**

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [that

it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).

## BACKGROUND[1]

In July 2007, plaintiffs executed a promissory note in favor of Countrywide Home Loans, Inc. ("Countrywide") in the amount of $115,000 in connection with refinancing a loan. That same day, plaintiffs granted a mortgage on their home in Londonderry, New Hampshire (the "property") to Countrywide to secure the loan, with Mortgage Electronic Registration Systems, Inc. as the mortgagee in its capacity as nominee for Countrywide. The mortgage was eventually assigned to Bank of New York, with Shellpoint acting as the loan servicer.

Plaintiffs defaulted on their obligations under the mortgage and last made a mortgage payment in March 2017.

---

[1] The facts in this section are taken from defendants' statement of facts in their memorandum in support of their motion for summary judgment, to the extent those facts are not in dispute, see doc. no. 30-1 at 2-7, as well as from plaintiffs' amended complaint, to the extent those facts help to clarify plaintiffs' claims, see doc. no. 13.

2

On November 6, 2017, plaintiffs received a Notice of Foreclosure for the property, which listed a sale date of December 27, 2017.

On December 7, 2017, plaintiffs retained the services of a "loss mitigation specialist" named Douglas Mesquita to help apply for mortgage assistance.  Mesquita assisted plaintiffs in their efforts to obtain a loan modification agreement, contacting Shellpoint several times and submitting paperwork on plaintiffs' behalf.

Shortly before the date of the scheduled foreclosure sale, and after submitting a completed application for a loan modification agreement on plaintiffs' behalf to Shellpoint, Mesquita spoke with a Shellpoint representative and requested that the sale be postponed.  The representative explained several times that she had submitted a request for the foreclosure sale to be postponed but could not guarantee that it would be postponed.

The foreclosure sale took place as scheduled on December 27, 2017.  There was "snow on the ground and a forecast high well below freezing at 18 degrees."[2]  Doc. no. 13 at ¶ 32.  Bank

---

[2] The weather conditions are taken from allegations in plaintiffs' amended complaint.  Although there is no evidence in the record as to the conditions on December 27, defendants do not dispute plaintiffs' allegations on that point for purposes of summary judgment.

of New York purchased the property for $127,639. This action followed.

**DISCUSSION**

Plaintiffs assert six claims: two counts of breach of the duty of good faith and due diligence arising out of the foreclosure sale (Counts I and II); breach of the covenant of good faith and fair dealing in the mortgage agreement (Count III); negligent misrepresentation (Count IV); promissory or equitable estoppel (Count V); and "standing" (Count VI). Defendants move for summary judgment on all of plaintiffs' claims.

I. <u>Counts III-VI</u>

Counts III-VI arise out of plaintiffs' allegations in their amended complaint that Shellpoint represented to Mesquita that the foreclosure sale would not take place as scheduled. In their summary judgment motion, defendants pointed to evidence in the record, including plaintiffs' and Mesquita's deposition testimony, as well as audio recordings of a phone call between Mesquita and a Shellpoint representative, which shows that Shellpoint never made such a representation.

4

In their objection, plaintiffs acknowledge this evidence and agree that defendants are entitled to judgment on Counts III-VI. Therefore, defendants' motion is granted as to those counts.

II. Counts I and II

Plaintiffs bring two claims challenging defendants' conduct in selling plaintiffs' property. Count I alleges that defendants violated their duty of good faith and due diligence by conducting the foreclosure sale two days after Christmas on a cold day with snow on the ground, which resulted in a sale price far below market value. Count II alleges that defendants breached the duty of good faith and due diligence by proceeding with the sale despite being in receipt of plaintiffs' completed loan modification agreement.

New Hampshire law imposes a duty on a mortgagee to "exert every reasonable effort to obtain a fair and reasonable price under the circumstances." Murphy v. Fin. Dev. Corp., 126 N.H. 536, 541 (1985) (internal quotation marks and citation omitted). This duty is based on New Hampshire common law, which demands that "in the context of a foreclosure sale, the mortgagee owes the mortgagor a fiduciary duty of good faith and due diligence." Bascom Const., Inc. v. City Bank and Trust, 137 N.H. 472, 475

(1993) (citing Murphy, 126 N.H. at 541); see also People's United Bank v. Mountain Home Developers of Sunapee, LLC, 858 F. Supp. 2d 162, 167 (D.N.H. 2012).

The duties of good faith and due diligence are separate and distinct obligations. See Murphy, 126 N.H. at 541. In order to establish that a mortgagee violated its obligation of good faith, the plaintiff must show that the mortgagee intentionally disregarded a duty or had a purpose to injure the plaintiff. See id. at 541-42. To establish that the mortgagee breached its duty of due diligence, the plaintiff must show that a reasonable lender would have adjourned the sale or taken other measures to obtain a fair price. See id. at 542.

Plaintiffs do not distinguish between the duty of good faith and the duty of due diligence in their amended complaint or objection. Viewed generously, Count I alleges that Bank of New York violated its duty of due diligence by conducting a commercially unreasonable foreclosure sale, at which it obtained an unreasonably low purchase price. Count II alleges that Bank of New York breached the duty of good faith by failing to consider plaintiffs' loan modification before proceeding with the foreclosure sale and by purchasing the property itself at

the sale.[3]  Therefore, the court analyzes plaintiffs' claims under that legal framework.  See, e.g., Carideo v. PennyMac Loan Servs., LLC, No. 18-CV-911-SM, 2019 WL 635410, at *5 (D.N.H. Feb. 14, 2019) (noting that although plaintiffs' complaint includes a claim for breach of the duty of good faith and due diligence, it alleges only a breach of the duty of due diligence).

A.   Count I

In determining whether a reasonable lender would have adjourned a foreclosure sale or taken other measures to obtain a fair price, the court must consider "the circumstances of each case."  Murphy, 126 N.H. at 541.  A fair price is "'the price obtainable on a fair sale reasonably adjourned rather than the price obtainable when the season for selling was most favorable.'"  Silver v. First Nat'l Bank, 108 N.H. 390, 392

---

[3] Although plaintiffs appear to allege their claims in Counts I and II against both defendants, the obligation to conduct a foreclosure in good faith and with due diligence "do[es] not extend to parties other than the foreclosing mortgagee," such as the loan servicer.  Faiella v. Green Tree Servicing LLC, No. 16-cv-088-JD, 2016 WL 3546232, at *4 (D.N.H. June 23, 2016); Gikas v. JPMorgan Chase Bank, N.A., No. 11-cv-573-JL, 2013 WL 1457042, at *5 (D.N.H. Apr. 10, 2013).  Therefore, to the extent plaintiffs intended to assert their claims in Counts I and II against Shellpoint, defendants are entitled to summary judgment on those claims.

(1967) (quoting Wheeler v. Slocinski, 82 N.H. 211, 215 (1926)). Further, a fair and reasonable price is not the equivalent of "'fair market value' as in eminent domain cases nor is the mortgagee bound to give credit for the highest possible amount which might be obtained under different circumstances, as at an owner's sale.'" Id. (quoting Reconstruction Fin. Corp. v. Faulkner, 101 N.H. 352, 361 (1958)); see Ferguson v. Nat'l City Mortg., No. 2011-0100, 2012 WL 6869638, at *1 (N.H. Feb. 27, 2012).

Here, plaintiffs allege that Bank of New York did not make a reasonable effort to obtain a fair and reasonable price because it scheduled the foreclosure sale two days after Christmas and did not reschedule the sale despite it falling on a cold day when there was snow on the ground. Plaintiffs offer no support, and the court is aware of none, for the proposition that a mortgagee breaches the duty of due diligence by failing to cancel a foreclosure sale because it is cold and there is snow on the ground. Cf. McCarthy v. WPB Partners, LLC, No. 16-cv-081-LM, 2017 WL 4675742, at *5 (D.N.H. Oct. 16, 2017) (holding that expert testimony concerning the effect of limited road access to foreclosure sale because of unplowed road was sufficient to create a genuine issue of material fact as to whether defendant should have adjourned the sale). Nor is there

any support for the theory that a mortgagee breaches its duty of due diligence by conducting a foreclosure sale during the last week of December. See id. (suggesting that a claim for breach of the duty of due diligence based on "the undesirability of marketing the property during the winter season" would not survive summary judgment). Thus, viewing these facts in the light most favorable to plaintiffs, they do not support a claim for breach of the duty of due diligence.

Plaintiffs also contend that the sales price of $127,639 was well below fair market value, and that the price itself demonstrates that Bank of New York breached its duty of due diligence. "[A]lthough fair market value and fair price at a foreclosure sale are different concepts the New Hampshire Supreme Court has made it clear that evidence of fair market value is a relevant factor in evaluating fair price at a foreclosure sale." McCarthy, 2017 WL 4675742, at *5 (citing cases).

Plaintiffs attach two exhibits to their amended complaint: (1) a 2015 "Net Assessment" from the Town of Londonderry for the property of $147,400, doc. no. 13-2; and (2) an October 22, 2018 printout from www.zillow.com which estimates the value of the property at $187,456, doc. no. 13-3. In their objection, plaintiffs rely on these exhibits to support their contention

that Bank of New York sold their property at a below-market price.

Viewed in the light most favorable to plaintiffs, neither of the exhibits attached to plaintiffs' amended complaint creates a genuine issue of material fact as to whether Bank of New York breached its duty of due diligence in connection with the foreclosure sale. Plaintiffs offer no support for their theory that an estimate from a real estate company's website, particularly one from approximately eight months after the foreclosure sale, even if properly authenticated,[4] should be considered evidence of fair value. Plaintiffs do not offer any expert testimony or appraisal of the property to support the estimate contained in the printout. See, e.g., First NH Mortg. Corp. v. Greene, 139 N.H. 321, 325 (1995) (trial court's finding of violation of due diligence was supported by its determination that "purchase price was clearly inadequate," which in turn was "supported by the appraisal evidence admitted at trial"); Silver, 108 N.H. at 392–393 (1967) (finding that appraisal

---

[4] See, e.g., Williams v. Am. Honda Fin. Corp., No. 1:14-CV-12859, 2016 WL 11507789, at *7 (D. Mass. Feb. 11, 2016) (declining to consider at the summary judgment stage as evidence of fair value a National Automobile Dealers Association printout because the printout was not authenticated), vacated and rev'd in part on other grounds, 907 F.3d 83 (1st Cir. 2018).

valuation was evidence of what "the property would have brought at a reasonably adjourned sale").

Even assuming that the 2015 tax assessment of $147,400 represents a fair market value for the property on December 27, 2017,[5] it is insufficient to create a genuine issue of material fact as to whether Bank of New York complied with its duty of due diligence.  The property was sold for more than 86% of the price listed in the tax assessment.  New Hampshire courts have consistently held that such price differentials do not support a claim for breach of the duty of due diligence in connection with a foreclosure sale.  See Premier Capital, LLC v. Skaltsis, 155 N.H. 110, 117 (2007) (affirming judgment of superior court that foreclosure sale prices of 33% and 60% of the tax assessed value of properties were "reasonable" and did not show a breach of the duty of good faith and due diligence); Olbres, 142 N.H. at 234 (affirming trial court's finding that foreclosure price that was 42% of pre-foreclosure appraisal did not violate duty of due diligence); Peter v. Wells Fargo Home Mortgage, Inc., No. 01-C-664, 2012 WL 9492844, at *1 (N.H. Super. July 30, 2012) (granting defendants' motion for summary judgment and holding

---

[5] See Olbres v. Hampton Co-op. Bank, 142 N.H. 227, 234 (1997) (noting that real estate values fluctuate and "1991 appraisals are not conclusive of what constituted a fair price at the 1994 foreclosure sale").

11

that foreclosure sale at 85% of market value did not show a violation of the duty of due diligence); see also Resolution Trust Corp. v. Carr, 13 F.3d 425, 430 (1st Cir. 1993) (applying Massachusetts law) (noting that courts have granted dispositive pretrial motions on foreclosure claims with foreclosure prices as low as 39% of market value and that a price of 56% of market value did not show a lack of due diligence).

In sum, viewing the evidence in the light most favorable to plaintiffs, no reasonable factfinder could conclude that Bank of New York breached the duty of due diligence in conducting the foreclosure sale.  Therefore, the court grants defendants' motion for summary judgment on Count I.

B.   Count II

Count II alleges that Bank of New York breached the duty of good faith by proceeding with the foreclosure auction even though plaintiffs had submitted a completed loan modification application prior to the sale.  As defendants note in their motion for summary judgment, "this court has time and again held that lenders have no duty . . . to modify a loan or forbear from foreclosure."  Towle v. Ocwen Loan Servicing, LLC, No. 15-cv-189-LM, 2015 WL 4506964, at *2 (D.N.H. July 23, 2015) (citing cases); see also Brown v. Wells Fargo Home Mortg., No. 16-cv-

530-JL, 2017 WL 2178356, at *4 (D.N.H. May 17, 2017).
Therefore, Bank of New York did not breach its duty of good faith by proceeding with the foreclosure sale despite plaintiffs submitting a loan modification application prior to the sale.

Viewed generously, plaintiffs allege in Count II that Bank of New York violated its duty of good faith by purchasing the property itself. To create a genuine issue of material fact on their claim for violation of the duty of good faith, plaintiffs must point to some evidence demonstrating that Bank of New York conducted the foreclosure with an intent to injure or harm her. See Wheeler, 82 N.H. at 214. The allegations in the complaint and the evidence in the record falls far short of that standard. As the court noted in People's United, the New Hampshire Supreme Court in Murphy set a high threshold for the type of conduct that qualifies as a violation of the duty of good faith:

> In Murphy, the mortgagees: (1) provided minimal public notice of the foreclosure sale, which had been postponed from an earlier date, see id. at 543; (2) purchased the property themselves at a sale with no other bidders present, see id. at 539; (3) bought the property for an amount equal to the amount owed by the mortgagors, $27,000, see id.; (4) should have realized that the mortgagors' "equity in the property was at least $19,000," id. at 542; and (5) sold the property for $38,000 two days after purchasing it for $27,000, see id. at 539. Despite all that, the court ruled that "[t]here [was] insufficient evidence in the record to support the master's finding that the [mortgagees] acted in bad faith in failing to obtain a fair price for the [mortgagors'] property." Id. at 542.

13

858 F. Supp. 2d at 169. Here, nothing in the summary judgment record rises to the level of harmful or injurious conduct that the New Hampshire Supreme Court rejected in Murphy as a valid basis for a violation of the duty of good faith, and certainly not the fact that Bank of New York purchased the property. See McCarthy, 2017 WL 4675742, at *7 (granting defendant's motion for summary judgment on claim for breach of the duty of good faith where mortgagee defendant purchased the property at the foreclosure sale).

For these reasons, defendants are entitled to summary judgment on plaintiffs' claim for breach of the duty of good faith.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (doc. no. 30) is granted. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 4, 2019
cc: Counsel of Record